# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

Melisa Mays, individually and as next friend of three
minor children, Michael Mays, Jacqueline Pemberton,
Keith John Pemberton, Elnora Carthan, and Rhonda Kelso,     CLASS ACTION
individually and as next friend of one minor child,
all on behalf of themselves and a class of all others
similarly situated,

                           Plaintiffs,                        Case No. 15-

vs.                                                    Hon.

Governor Rick Snyder, in his official capacity, and the
State of Michigan for prospective relief only; Daniel
Wyant, Liane Shekter Smith, Adam Rosenthal, Stephen
Busch, Patrick Cook, Michael Prysby, Bradley Wurfel all
in their individual capacities; Darnell Earley, Gerald
Ambrose, Dayne Walling, Howard Croft, Michael
Glasgow and Daugherty Johnson in their individual and
official capacities, and the City of Flint, a municipal
corporation, jointly and severally,

                           Defendants.

_____/

| | |
|---|---|
| William Goodman P14173 | Trachelle C. Young P63330 |
| Julie H. Hurwitz P34720 | Trachelle C Young & Associates |
| Goodman & Hurwitz, PC | PLLC |
| 1394 E. Jefferson Ave. | 2501 N Saginaw St |
| Detroit, MI 48207 | Flint, MI 48505-4443 |
| 313-567-6170 | 810-239-6302 |
| bgoodman@goodmanhurwitz.com | trachelleyoung@gmail.com |
| jhurwitz@goodmanhurwitz.com | |

Michael L. Pitt P24429
Cary S. McGehee P42318
Beth M. Rivers P36614
Pitt McGehee Palmer & Rivers, PC
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
248-398-9800

mpitt@pittlawpc.com
cmcgehee@pittlawpc.com
brivers@pittlawpc.com
_____/

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF MONEY DAMAGES AND JURY DEMAND

### INTRODUCTORY STATEMENT

1.      This class action is pursued on behalf of tens of thousands of residents ("Class") of the City of Flint ("Flint"), who from April 25, 2014 to the present, have experienced and will continue to experience serious personal injury and property damage caused by Defendants' deliberate decision to expose them to the extreme toxicity of water pumped from the Flint River into their homes, schools, hospitals, workplaces and public places.

2.      Defendants, who are all state of Michigan ("State") or Flint government employees, acting under the color of law, deliberately deprived Plaintiffs and the Plaintiff Class of the rights and guarantees secured by the 14th Amendment to the United States Constitution in that they deprived Plaintiffs of life, liberty and property without due process of law when they took from Plaintiffs safe drinking water and replaced it with what they knew to be a highly toxic alternative solely for fiscal purposes.

3.      "For more than 18 months, state and local government officials ignored irrefutable evidence that the water pumped from the Flint River exposed the

2

Plaintiffs and the Plaintiff Class to extreme toxicity, causing serious and dire injury and health hazards, and property damage to the Flint water users. These state and local officials, Defendants herein, regularly assured the Flint water users that the water supplied from the Flint River was being properly treated, monitored and tested and was safe to consume and use. Information obtained through the Freedom of Information Act establishes that many of these assurances were known to be false when uttered: state and local officials were not properly monitoring or sampling the Flint River water and delayed in notifying the public of serious safety and health risks in a knowing and deliberate effort to conceal the truth from those who were being poisoned. The deliberately false denials about the safety of the Flint River water was as deadly as it was arrogant."

4.    The massive personal and property injuries experienced by Plaintiffs and the Class, and the ensuing environmental disaster, reaches constitutional proportions because defendants, acting under the color of law, both created and increased the risk of prolonged serious and life threatening dangers to Plaintiffs and the Class where none existed before.

5.    The state and local government officials, Defendants herein, who made the decision to replace safe water with an alternative that created toxic water, violated the constitutional rights of Plaintiffs and Plaintiff Class members by acting

in a manner that shocks the conscience and was deliberately indifferent to the those constitutional rights, as well as to the health and well-being of the Plaintiffs.

## JURISDICTION AND VENUE

6.     This is a civil action brought pursuant to 42 U.S.C. § 1983 seeking injunctive and declaratory relief together with monetary damages against Defendants for violation of Fourteenth Amendment of the United States Constitution.

7.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which authorizes federal courts to decide cases concerning federal questions; 28 U.S.C. § 1343(a)(3) and (4), which authorizes federal courts to hear civil rights cases; and 28 U.S.C. § 2201, the Declaratory Judgment Act.  This Court has personal jurisdiction over Defendants named herein as public officials of the State of Michigan sued in their individual capacities and public officials, employees of the City of Flint sued in their official and individual capacities and the City of Flint for violations of plaintiffs' constitutional rights. Similarly, the Court has jurisdiction over the Governor of the State of Michigan, in his official capacity, for prospective relief, exclusively.

8.     Venue is proper in this Court as Defendants conduct their business in the Eastern District of Michigan.

## PARTIES

A.     **PLAINTIFFS**

4

9.     Plaintiff representatives are citizens of the United States and at all relevant times were residents of Flint – individuals, home owners, parents and minors – who, since April 25, 2014, were and continue to be exposed to highly dangerous conditions created, caused and prolonged by Defendants' deliberate decision to replace safe drinking water supplied by the City of Detroit's water system with the extreme toxicity resulting from water pumped from the Flint River; and these Defendants continued failure to remediate these dangers notwithstanding their knowledge thereof.  Plaintiffs bring this action on behalf of themselves and a Class of individuals who were injured in their persons or their property after April 25, 2014 because of their exposure to the toxic water pumped from the Flint Rivers.

B.     **DEFENDANTS**

10.     All individual Defendants are sued in their individual and/or official capacities as indicated below.

11.     Defendant Rick Snyder is the Governor of the State of Michigan and is invested with executive power pursuant to Art. V, Section 1 of the Michigan Constitution.  The Governor, is responsible for the management of state government for the health and welfare of its citizens and residents and is sued by plaintiffs and the Class in his official capacity exclusively for prospective equitable relief to correct the harm caused and prolonged by state government and to prevent future injury.

12.     Defendant State of Michigan operates its Department of Environmental Quality ("MDEQ"), which is responsible for overall management of the state department responsible for the environmental safety and health of Michigan citizens and residents. The State is sued because, acting through MDEQ, it made the final decision that deliberately created, increased and prolonged the hazards, threats and dangers that arose by replacing of safe drinking washing and bathing water with a highly toxic alternative.

13.     Defendant Daniel Wyant ("Wyant") currently is and at all relevant times was Director of MDEQ and is sued by Plaintiffs and the Plaintiff Class in his individual capacity because he was aware of and participated in the decisions that deliberately created, increased and prolonged the hazards, threats and dangers that arose by replacing of safe drinking washing and bathing water with a highly toxic alternative.

14.     Liane Shekter Smith ("Smith") was at all relevant times Chief of the Office of Drinking Water and Municipal Assistance for MDEQ, holding that position until October 19, 2015 when she was removed because of "mistakes" in the manner in which the Flint water crisis was handled. Smith is individually liable because during her term, as Chief of Drinking Water for MDEQ, she approved of, and thereby participated in, the decisions that deliberately created, increased and prolonged the hazards, threats and dangers that arose by replacing of safe drinking washing and bathing water with a highly toxic alternative.

6

15.    Adam Rosenthal ("Rosenthal") was at all relevant times a Water Quality Analyst assigned to the Lansing District Office of the MDEQ. Rosenthal is individually liable because, as Water Quality Analyst for MDEQ, he approved of, and thereby participated in, the decisions that deliberately created, increased and prolonged the hazards, threats and dangers that arose by replacing of safe drinking washing and bathing water with a highly toxic alternative.

16.    Stephen Busch ("Busch") was at all relevant times District Supervisor assigned to the Lansing District Office of the MDEQ. Busch is individually liable because as District Office Supervisor of MDEQ he deliberately created, increased and prolonged the hazards by falsely reporting that anti-corrosive agents had been used to treat the highly corrosive Flint River water thereby enhancing the threats and dangers that arose by replacing of safe drinking washing and bathing water with a highly toxic alternative.

17.    Patrick Cook ("Cook") was at all relevant times Water Treatment Specialist assigned to the Lansing Community Drinking Water Unit of the MDEQ. Cook is individually liable because, as Water Treatment Specialist District of MDEQ, he approved of, and thereby participated in, the decisions that deliberately created, increased and prolonged the hazards, threats and dangers that arose by replacing of safe drinking washing and bathing water with a highly toxic alternative.

18.    Michael Prysby ("Prysby") was at all relevant times Engineer assigned to District 11 (Genesee County) of the MDEQ. Prysby is individually liable because

as Engineer assigned to District 11 because he approved of, and thereby participated in, the decisions that deliberately created, increased and prolonged the hazards, threats and dangers that arose by replacing of safe drinking washing and bathing water with a highly toxic alternative.

19.    Bradley Wurfel ("Wurfel) was at all relevant times was the Director of Communications for MDEQ. Wurfel is individually liable because as  Director of Communications he was responsible for the deliberate misleading and inaccurate communications that increased and prolonged the hazards, threats and dangers that arose by replacing of safe drinking washing and bathing water with a highly toxic alternative.

20.    Darnell Earley ("Earley") was the Emergency Manager appointed by the Governor on November 1, 2013 and served in this capacity until January 12, 2015. Earley is individually liable because during his term as Emergency Manager of Flint he deliberately created, increased and prolonged the hazards, threats and dangers that arose by replacing of safe drinking washing and bathing water with a highly toxic alternative.

21.    Gerald Ambrose ("Ambrose") was the Emergency Manager appointed by the Governor on January 13, 2015 and served in this capacity until April 28, 2015. Ambrose is individually liable because during his term as Emergency Manager of Flint he deliberately increased and prolonged the hazards, threats and dangers that

arose by replacing of safe drinking washing and bathing water with a highly toxic alternative.

22.    Dayne Walling ("Walling") was at all relevant times Mayor of Flint from August 4, 2009 until November 9, 2015 when he was unseated by Karen Weaver.  Walling is individually liable because, as Mayor, he approved of, and thereby participated in, the decisions that deliberately created, increased and prolonged the hazards, threats and dangers that arose by replacing of safe drinking washing and bathing water with a highly toxic alternative.

23.    Howard Croft ("Croft") was at all relevant times Director of Public Works for the City of Flint. Croft is individually liable because as Director of Public Works, he approved of, and thereby participated in, the decisions that deliberately created, increased and prolonged the hazards, threats and dangers that arose by replacing of safe drinking washing and bathing water with a highly toxic alternative.

24.    Michael Glasgow ("Glasgow") was at all relevant times Utilities Administrator for the City of Flint. Glasgow is individually liable because as Utilities Administrator, he deliberately created, increased and prolonged the hazards of using Flint River water because he provided the MDEQ with misleading and inaccurate reports about the threats and dangers that arose by replacing of safe drinking washing and bathing water with a highly toxic alternative.

25.    Daugherty Johnson was at all relevant times the Utilities Administrator for the City of Flint. Johnson is individually liable because, as Utilities

9

Administrator, he approved of, and thereby participated inthe decisions that deliberately created, increased and prolonged the hazards, threats and dangers that arose by replacing of safe drinking washing and bathing water with a highly toxic alternative.

26.     The City of Flint is a municipal corporation, so authorized by the laws of the State of Michigan that operates Department of Public Works and provides water to its residents and property owners as part of its responsibilities and services. The City of Flint is liable because, despite the protests of a number of elected and appointed officials within the organization, the municipal corporation itself, through its policy makers, deliberately created, increased and prolonged the hazards, threats and dangers that arose by replacing of safe drinking washing and bathing water with a highly toxic alternative.

## STATEMENT OF FACTS REGARDING THE MAYS FAMILY

27.     Plaintiff Melissa Mays, age 37, is married to plaintiff Michael Mays, age 40 and is mother and next friend of three minor children,  ages 17, 12, and 11.

28.     The Mays family at all relevant times lived in a single family home built around 1910 on Beecher Street in Flint.

29.     Melissa and Michael Mays were the equitable owners of the home located on Beecher Street.

30.     From April 18, 2014 until approximately September, 2014, members of the Mays family, unaware of the toxic nature of the tap water supplied by Flint,

10

regularly used the water for drinking, cooking, washing, bathing and clothes washing.

31.    In September, 2014 the Mays family, in response to an advisory to boil all drinking water coming from their taps, discontinued drinking or cooking with the water supplied by Flint.  The family was led to believe that the water would still be safe for washing, bathing and clothes washing. The family continued to wash, bathe and wash clothing with the water until the summer of 2015 when the family became aware of the highly toxic and deleterious nature of the supplied water.

32.    As a proximate result of Defendants actions, as set forth herein, members of the Mays family have experienced serious physical and emotional injury due to their exposure to the toxic water, including but not limited to:

      a.  High levels of lead and copper in their bloodstreams, brains, bones and other organs;

      b.  Skin lesions and hair loss;

      c.  Chemical induced hypertension;

      d.  Autoimmune disorder;

      e.  Neurological disorders such as "brain fog", seizure like convulsions, vision loss, memory loss;

      f.  Psychological disorders such as depression, chronic anxiety, post-traumatic stress disorder and an inability to cope with normal stress.

33.    Melissa and Michael Mays have experienced property damage in the nature of irreparably damaged service line pipes resulting from Flint's use of Flint

water without use of an anti-corrosive agent; as well, they have sustained substantial loss in the value of their property.

## STATEMENT OF FACTS REGARDING THE PEMBERTON FAMILY

34.     Keith John Pemberton and Jacqueline Pemberton are 67 and 66 years old and live on Custer Street in Flint.

35.     The Pembertons own the home on Custer Street.

36.     As a proximate result of Defendants actions, as set forth herein, the Pembertons have experienced property damage in the nature of irreparably damaged service line pipes resulting from Flint's use of Flint water without use of an anti-corrosive agent, as well as the substantial loss in the value of their property. They have experienced serious physical and emotional injury due to their exposure to the toxic water, including but not limited to:

      a.  High levels of lead and copper in their bloodstreams, brains, bones and other organs;

      b.  Skin lesions and hair loss;

      c.  Neurological disorders such as "brain fog", seizure like convulsions, vision loss, memory loss;

      d.  Chronic and acute abdominal and stomach discomfort;

      e.  Psychological disorders such as depression, chronic anxiety and an inability to cope with normal stress.

## STATEMENT OF FACTS REGARDING ELNORA CARTHAN

37.     Elnora Carthan is a 70 year old widow who lives alone at, a home she

owns in Flint and where she has lived since 1976.

38.     In April, 2014, after the actions of these Defendants caused her water

to become highly toxic, when it had once been safe and nourishing, Ms. Carthan

began to boil her water but also continued to cook with it and to wash and bathe with

it.

39.     Finally, in August, 2015, the opportunity arose for her to have her water

tested for the presence of lead and other metals. This opportunity arose due to the

efforts of Virginia Polytechnic Institute and State University ("Virginia Tech"),

notwithstanding the continuous denials and roadblocks to such testing posed by

these Defendants. As a result, she determined that the lead levels in her water vastly

exceeded anything close to acceptable and were, in fact, extremely dangerous.

40.     As a proximate result of Defendants actions, as set forth herein, Ms.

Carthan has suffered property damage as well as a loss in the value of her property.

41.     As a proximate result of Defendants actions, as set forth herein, Ms.

Carthan has experienced serious physical and emotional injury due to her exposure

to the toxic water, including but not limited to:

      a.  Skin lesions and dermatologic pathology;

      b.  Neurological disorders, including but not limited to constant exhaustion and memory loss;

      c.  Chronic and acute respiratory disorders including, but not limited to, chronic rhinitis;

13

    d.  Psychological disorders such as depression, chronic anxiety, post-traumatic stress disorder and an inability to cope with normal stress.

## STATEMENT OF FACTS REGARDING THE KELSO FAMILY

42.    Rhonda Kelso is a 52 year old woman who suffers from several disabilities, including the results of a stroke, spastic paraparesis and bi-polar disorder. She owns her home located in Flint. She and her family have lived in that home since 1993.

43.    As a result of the toxicity in the water, these Defendants have caused massive damage to the water pipes in the Keslo home, causing extreme disruption, inconvenience, discomfort and emotional distress.

44.    Ms. Kelso lives at the aforementioned home with her minor daughter "K.E.K." who is 12 years old. K.E.K. is a special needs student in school and suffers from a number of disabilities including, but not limited to hearing impairment, cardiac problems, and developmental delays involving speech and language.

45.    Both Rhonda Kelso and K.E.K. drank the toxic water from April, 2014 until the Autumn of 2014. They bathed, washed and cooked with the water until at least January, 2015.

46.    As a proximate result of Defendants actions, as set forth herein, Ms. Kelso has suffered a loss in the value of her property.

47.     As a proximate result of Defendants actions, as set forth herein, Ms. Kelso has experienced serious physical and emotional injury due to her exposure to the toxic water, including but not limited to:

      a.  Skin lesions and dermatologic pathology, including hair loss;

      b.  Chronic throat and respiratory disorders, including aggravation of asthma;

      c.  Aggravation of the pre-existing conditions and disabilities, referenced above;

      d.  Psychological disorders such as depression, chronic anxiety, post-traumatic stress disorder and an inability to cope with normal stress, all due in part to the injuries and damage caused to her daughter K.E.K., as set forth below.

48.     As a proximate result of Defendants actions, as set forth herein. K.E.K. has experienced serious physical and emotional injury due to her exposure to the toxic water, including but not limited to:

      a.  Heightened levels of lead in her blood;

      b.  Inability to overcome her developmental disorders, particularly speech and language development and, to some extent, a worsening of those disorders;

      c.  Aggravation of the pre-existing conditions and disabilities, referenced above;

      d.  Psychological and emotional problems.

**STATEMENT OF FACTS REGARDING DEFENDANTS' DECISION TO REPLACE SAFE DRINKING WATER WITH A TOXIC ALTERNATIVE**

49.     From 1964 to 2014, Flint water users received their water from Lake Huron via the Detroit water system.

50.     During this 50 year span, the Flint water users enjoyed safe, clean, fresh water in their homes, businesses, hospitals other places of public services.

51.     In 2011, Flint government officials commissioned a study to determine if the Flint River could be safely used by the city as the primary source of drinking water for its more than 31,000 users.

52.     According to recent media reports, the report stated that the water from the Flint River was highly corrosive and could not be used safely without an anti-corrosive agent to prevent lead, copper and other heavy metals from leaching from lead, copper and iron based water lines.

53.     According to recent media reports, in 2013, Flint government officials delivered to MDEQ the report that stated and warned that the Flint River water was highly corrosive and could not be used as a primary source of drinking water unless treated with anti-corrosive agents.

54.     In March, 2013, the Flint City Council approved a resolution to secure future water service from a regional water authority known as the Karegnondi Water Authority ("KWA") scheduled to become operational in 2016.

55.     In April 2014, although safe water from Detroit remained available on a temporary basis until the KWA became operational two years later, Flint Emergency Manager at the time Defendant Earley ordered Flint to draw water from

16

the Flint River, even though he knew that the water was highly corrosive and dangerous to people and property when distributed without proper anti-corrosive treatment.

56.     According to recent media reports, defendants had been informed by the 2011 report that use of the Flint River water, without a proper anti-corrosive treatment, would create a condition dangerous to health and property.

57.     Beginning in April 2014, Defendants were fully aware that the required and necessary anti-corrosive was not being used in during the distribution of Flint River water to Flint residents, families and home owners.

58.     It has been estimated that the daily cost of the anti-corrosive agent would have been $60.

59.     Flint water users, having enjoyed decades of safe, clean and fresh water via the Detroit water system, knew almost immediately after the switch to Flint River water that something was not right about this new water supply.

60.      Within days after the switch, Defendants began receiving complaints from water users that the water was cloudy and foul in appearance, taste and odor.

61.     During the next 8 months, Flint water users expressed their concerns about water quality in a multiple of ways including letters, emails and telephone calls to Flint and MDEQ officials, the media and through well publicized demonstrations on the streets of Flint.

62.    After 8 months of undertaking this failed "experiment," the only reasonable response to the mounting complaints would have been to reconnect the Flint water system to the Detroit water system.  Instead, Defendants ignored the protests, went into deliberate denial mode, offered ineffective solutions and continued to falsely reassure and insist that the water was safe even though they knew that the foul taste, odor and appearance probably was the result of using highly corrosive Flint River water, untreated with the proper anti-corrosive agents, which caused particulate lead to contaminate the water.

63.    Beginning almost immediately after the Flint River became the primary source of water for the Flint users, the MDEQ and Flint officials were aware of elevated levels of Trihalomethanes ("TTHM") in the water and that these levels were above the legal limit.

64.    After about 7 months of elevated TTHM levels, Flint water users received a notice in January, 2015 from Flint stating that the water was not in compliance with the federal Safe Drinking Water Act because unlawful levels of TTHMs.

65.    Within a few weeks of the issuance of the TTHM notice, Flint City Council members approached Emergency Manager Defendant Earley demanding that a reasonable response to the health risks would be that Flint should reconnect with Detroit water. Earley refused to act as requested by members of the City Council.

18

66.     At this same time, representatives of the Detroit water system expressed interest in re-establishing a relationship with Flint and offered to waive the $4 million re-connect fee in order re-establish the relationship.   Defendant Earley rejected this initiative, and deliberately continued to mislead Flint residents to believe that their water was safe.

67.     On January 20, 2015, citizen protests mounted, fueled in part by encouragement from environmental activist Erin Brockovich and her associate, water expert Bob Bowcock.   These advocates offered advice and assistance to the protesting Flint water users who were now very concerned about the health risks they faced by this toxic water.

68.     On January 13, 2015, Earley left his position as Emergency Manager and was replaced by Emergency Manager Ambrose. On January 29, 2015, Detroit Director of Water offered to Emergency Manager Ambrose another opportunity to protect Plaintiffs and the Plaintiff Class from known dangers and to use Detroit water.   Notwithstanding Detroit's overture, Emergency Manager Ambrose rejected this offer, and deliberately continued to mislead Flint residents to believe that their water was safe.

69.     On February 17, 2015, Flint water users staged public demonstrations demanding that Flint re-connect with Detroit.   Once again Ambrose refused to restore Detroit water for Flint water users and deliberately continued to endanger Plaintiffs and Plaintiff Class.

70.     In the meantime, and according to emails received via the Freedom of Information Act, the MDEQ (including named Defendants from that agency) knew that Flint residents were being exposed to particulate lead on a daily basis. Moreover, MDEQ representatives, including named Defendants, knew that inaccurate test results were providing false assurance to residents about the true lead levels in the water.

71.     On March 25, 2015, Flint City Council voted to re-connect to Detroit's water system.  Ambrose rejected this vote and continued to refuse to re-connect the Flint system back to the Detroit water system.

72.     In June of 2015, EPA representative Miquel Del Toral wrote a detailed memo outlining numerous dangerous problems with the water being pumped from the Flint River including unacceptable levels of lead. This report was shared with MDEQ defendants Shekter-Smith, Cook, Busch and Prysby.

73.     During the spring and summer of 2015, Professor Marc Edwards ("Professor Edwards") and other experts from Virginia Tech tested 277 drinking water samples and found that 10% of the samples had lead levels of 25 parts per billion (ppb), substantially in excess of the federal action level of 15 ppb.

74.     Professor Edwards also determined that the Flint River water was 19 times more corrosive than the water pumped from Lake Huron by the Detroit water system.

75.     When Professor Edwards published the results of his studies, demands for the re-connecting to the Detroit water system started to be made to the Defendants. These demands came from national and regional public interest groups such as the ACLU of Michigan, the Natural Resources Defense Council and local public interest groups such as the Michigan Chapter of the National Conference Black Lawyers, NAACP-Michigan State Conference, Michigan Nurses Association, Democracy Defense League Water Task Force, Water You Fighting For, Concerned Pastors for Social Action, Coalition for Clean Water and other similar public interest groups.

76.     At this time, public interest groups investigating the growing crisis noted that Flint did not have records of which user had or did not have lead service pipes or plumbing.  Flint was required by Federal law to maintain these records so that Flint and the MDEQ could alter those users who were most at risk and that proper testing could be carried out. The absence of these required records was increasing the risk of harm to many Flint water users.

77.     In addition, Dr. Mona Hanna-Attisha MD of Hurley Hospital demonstrated a dramatic and dangerous spike in elevated blood lead levels in a large cohort of Flint children corresponding with the time of exposure to the highly corrosive Flint River water. Her disturbing results were published in August of 2015.

78.     Faced with overwhelming evidence that the water was unsafe to drink and a source of lead poisoning for the children of Flint and other vulnerable persons,

21

Genesee County Health Officials, on October 1, 2015, issued a public health emergency advising Flint residents not to drink the tap water.

79.     Although reconnecting to the Detroit water system was the only reasonable option to protect the health and safety of the Flint water users, and this option should have been exercised within weeks of the appearance of the foul water, Defendants deliberately chose not to do so. Instead, on October 2, 2015, state officials announced that the State would provide water filters to Flint water users in a useless effort to ameliorate the problem.

80.     On October 8, 2015, Defendant Snyder recognized that he could no longer pretend that the water from the Flint River was safe. He finally ordered Flint to re-connect with the Detroit water system.

81.     However, based on information and belief, due to the prolonged exposure of contaminated water without adequate anti-corrosive agents, Plaintiffs and Plaintiff Class members continue to be exposed to toxic water until such time that pipes and services lines that were damaged by corrosive water from the Flint River can be replaced.

## CLASS ALLEGATIONS

82.     This action is brought by the named Plaintiffs on behalf of individuals who from April 25, 2014 to present were exposed to toxic Flint water and experienced an injury to their person or property or who in the future will be so injured.

83.     The number of injured individuals who have been injured by exposure to toxic Flint water is in the tens of thousands.  The number of class members is sufficiently numerous to make class action status the most practical method for Plaintiffs to secure redress for injuries sustained and class wide equitable relief.

84.     There are questions of law and fact raised by the named Plaintiffs' claims common to, and typical of, those raised by the Class they seek to represent.

85.     The violations of law and resulting harms alleged by the named Plaintiffs are typical of the legal violations and harms suffered by all Class members.

86.     Plaintiff Class representatives will fairly and adequately protect the interests of the Plaintiff class members.  Plaintiffs' counsel are unaware of any conflicts of interest between the class representatives and absent class members with respect to the matters at issue in this litigation; the class representatives will vigorously prosecute the suit on behalf of the Class; and the class representatives are represented by experienced counsel.  Plaintiffs are represented by attorneys with substantial experience and expertise in complex and class action litigation involving personal and property damage.

87.      Plaintiffs' attorneys have identified and thoroughly investigated all claims in this action, and have committed sufficient resources to represent the Class.

88.     The maintenance of the action as a class action will be superior to other available methods of adjudication and will promote the convenient administration of justice.  Moreover, the prosecution of separate actions by individual members of the

Class could result in inconsistent or varying adjudications with respect to individual members of the Class and/or one or more of the Defendants.

89.    Defendants have acted or failed to act on grounds generally applicable to all Plaintiffs, necessitating declaratory and injunctive relief for the Class.

## COUNT I-CAUSE OF ACTION:  VIOLATION OF 42 U.S.C. § 1983 SUBSTANTIVE DUE PROCESS – STATE CREATED DANGER PLAINTIFFS V ALL DEFENDANTS

90.    The due process clause of the 14th Amendment provides that the state may not deprive a person of life, liberty or property without due process of law.

91.    These Defendants deliberately withdrew water that was safe for drinking, cooking, washing and bathing from Plaintiffs and the Plaintiff Class. They deliberately exposed Plaintiffs and the Plaintiff Class to dangerous, unsafe and untreated (or inadequately treated) Flint River water knowing that it could and would result in widespread permanent serious damage caused by the toxic water including the irreversible lead poisoning of children and other vulnerable persons.  This conduct was culpable in the extreme.

92.    Plaintiffs and Class Members were foreseeable victims of the decision to replace safe water with a toxic alternative.

93.    The decisions and actions to deprive Plaintiffs and the Plaintiff Class of clean and healthy water and to replace that water with toxic, unhealthy and unsafe water constituted affirmative acts that caused and/or increased the risk of harm, both

property damage, as well as physical and emotional injury, to Plaintiffs and Plaintiff Class.

94.     At all times herein Defendants acted under color of law.

95.     The unconstitutional acts of Earley and Ambrose as Emergency Managers executes a policy statement or decision officially adopted by the City of Flint.

96.     As a direct and proximate result of the unconstitutional acts of Defendants as alleged in this complaint, Plaintiffs and Plaintiff Class members have experienced serious and in some cases life threatening and irreversible bodily injury; Plaintiffs and Plaintiff Class members have and will incur substantial economic losses in the nature of medical expenses, lost wages; Plaintiffs and Plaintiff Class members are entitled to an award of non-economic damages in the nature of pain and suffering, embarrassment, outrage, mental anguish, fear and mortification, and stress related physical symptoms such as sleepiness, gastro-intestinal discomfort, neuropathy and similar symptoms.

97.     Plaintiffs and Plaintiff Class members have experienced property damage to the homes and places of business in the nature of lost property value and seek damages to remediate the permanent damage caused by the use of corrosive water without proper anti-corrosive treatment.

98.     The conduct of Defendants was reckless and outrageous, entitling Plaintiffs and Plaintiff Class members to an award of punitive damages.

25

## COUNT II -CAUSE OF ACTION:  VIOLATION OF 42 U.S.C. § 1983 SUBSTANTIVE DUE PROCESS – BODILY INTEGRITY PLAINTIFFS v ALL DEFENDANTS

99.     The due process clause of the 14th Amendment includes an implied right to bodily integrity.

100.    Defendants violated Plaintiffs' and Plaintiff Class members' right to bodily integrity, insofar as:

    a.   Defendants a duty to protect Plaintiffs and Plaintiff Class members from a foreseeable risk of harm from contaminated water;

    b.   Defendants knew of the serious medical risks associated with exposure to contaminated water;

    c.   Defendants failed to protect Plaintiffs and Plaintiff Class members from the known risks associated with exposure to contaminated water; and

    d.   Plaintiffs and Plaintiff Class members suffered bodily harm as a result of their exposure to contaminated water.

101.    Defendants' conduct in exposing Flint residents to toxic water was so egregious and so outrageous that it shocks the conscience. Defendants had time for deliberation in their decisions to expose Flint residents to toxic water, and their decision to do so was made with deliberate indifference to the serious medical risks.

102.    As a direct and proximate result of the unconstitutional acts of Defendants as alleged in this complaint, Plaintiffs and Plaintiff Class members have

26

experienced serious and in some cases life threatening and irreversible bodily injury; Plaintiffs and Plaintiff Class members have and will incur substantial economic losses in the nature of medical expenses, lost wages; Plaintiffs and Plaintiff Class members are entitled to an award of non-economic damages in the nature of pain and suffering, embarrassment, outrage, mental anguish, fear and mortification, and stress related physical symptoms such as sleepiness, gastro-intestinal discomfort, neuropathy and similar symptoms.

103.   The conduct of Defendants was reckless and outrageous, entitling Plaintiffs and Plaintiff Class members to an award of punitive damages.

## RELIEF REQUESTED

Accordingly, plaintiffs request the following relief from the court:

a.   An order certifying this case as a Class Action;

b.   An order declaring the conduct of defendants unconstitutional;

c.   An order of equitable relief to remediate the harm caused by defendants unconstitutional conduct including repairs or property, establishment of as medical monitoring fund and appointing a monitor to oversee the water operations of Flint for a period of time deemed appropriate by the court;

d.   An order for an award of compensatory damages;

e.   An order for an award of punitive damages;

27

    f.       An order for an award of actual reasonable attorney fees and

litigation expenses;

    g.       An order for all such other relief the court deems equitable.

Respectfully submitted,

By:*/s/ Michael L. Pitt P24429*
Michael L. Pitt P24429
Cary S. McGehee P42318
Beth M. Rivers P36614
Pitt McGehee Palmer & Rivers, PC
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
248-398-9800
mpitt@pittlawpc.com
cmcgehee@pittlawpc.com
brivers@pittlawpc.com

Dated:  November 13, 2015

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

Melisa Mays, individually and as next friend of three
minor children, Michael Mays, Jacqueline Pemberton,
Keith John Pemberton, Elnora Carthan, and Rhonda Kelso,      CLASS ACTION
individually and as next friend of one minor child,
all on behalf of themselves and a class of all others
similarly situated,

                Plaintiffs,      Case No. 15-

vs.      Hon.

Governor Rick Snyder, in his official capacity, and the
State of Michigan for prospective relief only; Daniel
Wyant, Liane Shekter Smith, Adam Rosenthal, Stephen
Busch, Patrick Cook, Michael Prysby, Bradley Wurfel all
in their individual capacities; Darnell Earley, Gerald
Ambrose, Dayne Walling, Howard Croft, Michael
Glasgow and Daugherty Johnson in their individual and
official capacities, and the City of Flint, a municipal
corporation, jointly and severally,
                Defendants.

_____/

William Goodman P14173
Julie H. Hurwitz P34720
Goodman & Hurwitz, PC
1394 E. Jefferson Ave.
Detroit, MI 48207
313-567-6170
bgoodman@goodmanhurwitz.com
jhurwitz@goodmanhurwitz.com

Michael L. Pitt P24429
Cary S. McGehee P42318
Beth M. Rivers P36614
Pitt McGehee Palmer & Rivers, PC
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
248-398-9800
mpitt@pittlawpc.com
cmcgehee@pittlawpc.com

Trachelle C. Young P63330
Trachelle C Young & Associates
PLLC
2501 N Saginaw St
Flint, MI 48505-4443
810-239-6302
trachelleyoung@gmail.com

29

brivers@pittlawpc.com

_____/

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury as to all those issues triable as of right.


Respectfully submitted,

By:*/s/ Michael L. Pitt P24429*
Michael L. Pitt P24429
Cary S. McGehee P42318
Beth M. Rivers P36614
Pitt McGehee Palmer & Rivers, PC
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
248-398-9800
mpitt@pittlawpc.com
cmcgehee@pittlawpc.com
brivers@pittlawpc.com

Dated:  November 13, 2015