UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELISSA MAYS, *et al.*,

    Plaintiffs,

Case No. 15-14002

v.

Hon. John Corbett O'Meara

GOVERNOR RICK SNYDER, *et al.*,

    Defendants.

_____/

## OPINION AND ORDER

Before the court are six motions to dismiss Plaintiffs' amended complaint filed by Defendants, which have been fully briefed. For the reasons explained below, Defendants' motions to dismiss are granted.

## BACKGROUND FACTS

This case arises out of the contamination of drinking water in Flint, Michigan. Plaintiffs intend to represent a class of Flint residents and others who used Flint water from April 25, 2014, to the present. Defendants are Michigan Governor Rick Snyder, the State of Michigan, Daniel Wyant, Nick Lyon, Andy Dillon, Liane Shekter Smith, Adam Rosenthal, Stephen Busch, Patrick Cook, Michael Prysby, Bradley Wurfel, Jeff Wright, Edward Kurtz, Darnell Earley,

Gerald Ambrose, Dayne Walling, Howard Croft, Michael Glasgow, Daugherty Johnson, and the City of Flint.

Plaintiffs' amended complaint alleges the following causes of action: Count I, substantive due process/state created danger, 42 U.S.C. § 1983; Count II, substantive due process/bodily integrity, § 1983; Count III, equal protection based upon race, § 1983; Count IV, equal protection based upon wealth, § 1983; Count V, conspiracy, § 1985; and Count VI, violation of the public service provisions of the Elliott-Larsen Civil Rights Act. Plaintiffs allege that "Defendants caused a public health crisis by exposing Plaintiffs to contaminated water." Amended Compl. at ¶ 1. Defendants have moved to dismiss Plaintiffs' complaint on various grounds, pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

## LAW AND ANALYSIS

### I. Preclusion of § 1983 Claims

In Boler v. Earley, No. 16-10323, Docket No. 56 (E.D. Mich., O'Meara, J.), another case involving Flint water contamination, the court concluded that the plaintiffs' constitutional claims brought pursuant to § 1983 were precluded by the Safe Drinking Water Act ("SDWA"). Defendants urge the same result here, contending that if Plaintiffs' § 1983 claims are not viable, Plaintiffs lack a federal cause of action and this court should dismiss Plaintiffs' complaint.

In determining whether a statute precludes suit under § 1983, "[t]he crucial consideration is what Congress intended." Smith v. Robinson, 468 U.S. 992, 1012 (1984). "When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." Middlesex Cty. Sewerage Authority v. National Sea Clammers Assn., 453 U.S. 1, 20 (1981). In Sea Clammers, the Court found that the Federal Water Pollution Control Act (FWPCA) and the Marine Protection, Research, and Sanctuaries Act of 1972 (MPRSA), contained comprehensive enforcement mechanisms. The Court held that these enforcement schemes demonstrated Congress's intent "to supplant any remedy that otherwise would be available under § 1983." Id. at 21.

Relying on Sea Clammers, the First Circuit in Matoon v. Pittsfield, 980 F.2d 1 (1st Cir. 1992), found that the Safe Drinking Water Act precluded other federal remedies for unsafe public drinking water. In Matoon, the plaintiffs were residents who allegedly contracted giardiasis from drinking contaminated water supplied by the City of Pittsfield, Massachusetts. They alleged a breach of warranty claim, a "public nuisance" claim under federal common law, a claim under 42 U.S.C. § 1983, and a SDWA claim.

The Matoon court found the federal common law nuisance claim to be

preempted by the SDWA, because "Congress occupied the field of public drinking water regulation with its enactment of the SDWA." Matoon, 980 F.2d at 4. Quoting the legislative history, the court noted that the purpose of the SDWA "is to assure that water supply systems serving the public meet minimum *national standards* for protection of public health." Id. (citations omitted). With minor exceptions, the SDWA applies "to each public water system in each State." Id. at 4 (quoting 42 U.S.C. §300g). The SDWA enables the Administrator of the Environmental Protection Agency to "publish maximum contaminant level goals and promulgate national primary drinking water regulations." Id. (quoting 42 U.S.C. §300g-1(b)(1). After reviewing, the regulatory scheme, the First Circuit concluded that "the SDWA evinces a clear congressional intent to entrust the regulation of the public drinking water systems to an expert regulatory agency rather than the courts." Matoon, 980 F.2d at 4-5. The court determined that, as a result, the federal common law nuisance claim was preempted by the SDWA.

The Matoon court further determined that the plaintiffs' § 1983 claims were precluded by the SDWA as well. The court noted the "elaborate enforcement scheme" set forth in the SDWA, including that the EPA Administrator may bring a civil action to compel SDWA compliance and may issue compliance orders against violators of SDWA regulations. Id. at 5-6 (citing 42 U.S.C. § 300g-3(b) and §

300g-3(b)(1)). In addition, citizens may initiate enforcement proceedings against SDWA violators and against the EPA Administrator for failure to perform any non-discretionary duty under the SDWA. See id.; 42 U.S.C. § 300j-8.

As the court explained, because "the SDWA enforcement scheme is closely analogous to other enforcement schemes found sufficiently comprehensive to evince a clear congressional intent to preempt relief under section 1983, we hold that appellants' section 1983 claims are preempted by the SDWA." Matoon, 980 F.2d at 6. "Comprehensive federal statutory schemes, such as the SDWA, preclude rights of action under section 1983 for alleged deprivations of constitutional rights in the field occupied by the federal statutory scheme." Id. See also Sea Clammers, 453 U.S. at 21 (FWPCA and MPRSA supplant remedies under § 1983); City of Rancho Palos Verdes v. Abrams, 544 U.S. 113 (2005) (remedial scheme in Telecommunications Act precludes § 1983 action); Smith v. Robinson, 468 U.S. 992 (1984) (Education of Handicapped Act provides exclusive remedy even when plaintiffs assert constitutional claims); Zombro v. Baltimore City Police Dept., 868 F.2d 1364 (4th Cir.), cert. denied, 493 U.S. 850 (1989) (ADEA, not § 1983, is exclusive remedy for age discrimination claims under federal law).

The essence of Plaintiffs' constitutional claims is that Plaintiffs were injured as a result of exposure to contaminated water. See Amended Compl. at ¶¶ 122,

138, 146, 154, 170, 186.  Plaintiffs' allegations are addressed by regulations that have been promulgated by the EPA under the SDWA. See, e.g., 40 C.F.R. § 141.11 (regulating maximum contaminant levels); 40 C.F.R. § 141.31 *et seq.* (reporting and record keeping); 40 C.F.R. § 141.60 *et seq.* (maximum contaminant and residual disinfectant levels); 40 C.F.R. § 141.80 *et seq.* (control of lead and copper/corrosion control/lead service line replacement requirements); 40 C.F.R. § 141.110 (regulating treatment techniques).  Indeed, the safety of public water systems is a field occupied by the SDWA. Matoon, 980 F.2d at 4.  Accordingly, consistent with its decision in Boler, the court concludes that Plaintiffs' *federal* remedy is under the SDWA, regardless of how their legal theories are characterized in the complaint.

Plaintiffs argue that their § 1983 claims are not precluded, relying on Charvat v. Eastern Ohio Regional Wastewater Authority, 246 F.3d 607 (6th Cir. 2001) and Fitzgerald v. Barnstable School Comm., 555 U.S. 246 (2009).  Charvat and Fitzgerald are distinguishable, however.  In Fitzgerald, the Supreme Court determined that Title IX did not preclude an equal protection claim alleging unconstitutional gender discrimination in schools.  The Court found that, unlike the statutes at issue in Sea Clammers, Smith, and Rancho Palos Verdes, Title IX did not provide a carefully tailored private enforcement mechanism.  The Court noted

that Title IX's remedies (withdrawal of federal funds and an implied cause of action) "stand in stark contract to the 'unusually elaborate,' 'carefully tailored,' and 'restrictive' enforcement schemes of the statutes at issue in *Sea Clammers, Smith,* and *Rancho Palos Verdes.*" Fitzgerald, 555 U.S. at 255. Like those statutes, and unlike Title IX, the SDWA "establishes an elaborate enforcement scheme" with respect to safe drinking water. Allowing parallel § 1983 claims to proceed would "circumvent" the SDWA's procedures and would be "inconsistent with Congress' carefully tailored scheme." Id. at 254-55 (citation omitted).

In Charvat, the Sixth Circuit concluded that the SDWA's whistleblower provisions did not preclude the plaintiff from bringing suit under § 1983 for a First Amendment violation. The whistleblower provisions of the SDWA, however, do not contain the same "elaborate enforcement scheme" as the substantive provisions of the statute. Rather, the whistleblower provisions provide for an administrative remedy, which "is not necessarily sufficient to demonstrate Congress intended to foreclose a § 1983 remedy." Charvat, 246 F.3d at 614-15 (citation omitted).

The court is mindful that it is not to "lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy for a substantial equal protection claim." Smith, 468 U.S. at 1012. The elaborate enforcement scheme of the SDWA, however, leads it to conclude that § 1983 claims seeking to remedy unsafe

drinking water would be "inconsistent with Congress' carefully tailored scheme." Id. See also Hildebrand v. Allegheny Cty., 757 F.3d 99, (3d Cir. 2014) ("The Supreme Court has consistently indicated that the comprehensiveness of a statute's remedial scheme is the primary factor in determining congressional intent.").

Without viable constitutional claims, Plaintiffs' conspiracy claim under § 1985(3) based upon the same conduct also fails. See Beztak Land Co. v. City of Detroit, 298 F.3d 559, 568-69 (6th Cir. 2002). The court will dismiss Plaintiffs' claims under §§ 1983 and 1985.

## II.  ELCRA Claim

The court will decline to exercise supplemental jurisdiction over Plaintiffs' remaining claim, which arises under Michigan's Elliott-Larsen Civil Rights Act. Generally, "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." Taylor v. First of Am. Bank-Wayne, 973 F.2d 1284, 1287 (6th Cir. 1992) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)).

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that Defendants' motions to dismiss are GRANTED and Plaintiffs' complaint is DISMISSED.

                                              s/John Corbett O'Meara
                                              United States District Judge

Date:  February 2, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, February 2, 2017, using the ECF system.

                                              s/William Barkholz
                                              Case Manager